```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

| | |
|---|---|
| Jamy Kozak                                : | |
|     Plaintiff                             : | (Case No. 3:16-CV-750) |
|     v..                                   : | (Judge Richard P. Conaboy) |
| Vanesko Enterprises, Inc. et al           : | |
| and Jeffrey P. Vanesko                      | |
|     Defendant                             : | |

_____

**Memorandum**

We consider here Defendants' (Vanesko Enterprises, Inc., and Jeffrey P. Vanesko) Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Motion to Strike Claims for Punitive Damages and Attorneys Fees Pursuant to Federal Rule of Civil Procedure 12(f).  (Doc. 7).  Via this motion Defendants asked this Court to dismiss all but Counts 4 and 5 of Plaintiff's 12-Count complaint.  (Doc. 1)

Plaintiff's complaint is in federal court because he alleges violations of two federal statutes: the Employee Retirement Income Security Act ("ERISA") and the Fair Labor Standards Act ("FLSA"). Plaintiff alleges also that he has various common law and statutory claims under Pennsylvania law over which this Court should assume pendent jurisdiction.  These Pennsylvania claims are set forth in counts seven through twelve of the complaint and include: breach of fiduciary duty; fraud; breach of contract; wrongful discharge; The

1

Pennsylvania Wage and Collection Law; and The Pennsylvania Unfair Trade Practices Act.

## I. Factual Allegations.[1]

This case arises from an employment relationship. Plaintiff Jamy Kozak worked for Defendant Vanesko Enterprises, Inc., from early 2013 through April 5, 2013 when he was laid off. (Doc. 1, ¶¶'s 7 and 11). Plaintiff was rehired by Defendants on or about June 3, 2013. (Id., ¶ 13). Upon Plaintiff's return to work, Defendant Vanesko Enterprises, Inc., deducted $50.00 bi-weekly from Plaintiff's payroll checks for health insurance. (Id., ¶¶'s 8 and 14). Defendants continued to make these bi-weekly deductions from June 3, 2013 through May of 2014. (Id., ¶ 15).

On or about May 4, 2014, Plaintiff was injured and required hospitalization. (Id., ¶ 16). After being discharged from the hospital, Plaintiff learned that he was not covered by health insurance and that it had been cancelled in May of 2013. (Id., ¶¶'s 18-20). Plaintiff's health insurance plan was cancelled or not reinstated because Defendants did not make the required premium payments. (Id., ¶ 21). Defendants' failure to make premium payments encompassed 11 months from June 2013 through May 2014 despite the fact that Plaintiff's check stubs for that entire time frame consistently indicated deductions for the purpose of health

---

[1] In the context of a Rule 12 (b)(6) motion we accept all well-pleaded factual allegations in Plaintiff's complaint as true. See Section II below.

2

insurance premiums. (Id., ¶¶'s 22-24).

As part of his compensation package Plaintiff had been informed that his health insurance plan was a benefit plan covered by ERISA, 29 U.S.C. ¶¶ 1001 et seq. (Id., ¶). Defendants never notified Plaintiff that his health insurance plan had been cancelled. (Id., ¶ 28). Plaintiff Kozak relied upon Defendants' representations that he was covered by a health insurance plan. (Id.,¶ 29). Plaintiff now owes approximately $144,000.00 to various medical providers in connection with this hospitalization and treatment for the injuries he suffered in May of 2014. (Id., ¶ 30).

Plaintiff returned to work for Defendants in August of 2014 whereupon he informed them that he had incurred the aforesaid debt due to his reliance on their false assurances that he had health coverage. (Id., ¶¶ 32-33). Defendants then refunded the insurance contributions that they had deducted from Plaintiff's pay checks from June 2013 through May 2014 without interest and, on the same date, terminated Plaintiff's employment. (Id., ¶ 35).

**II.  Legal Standard.**

In McTernan v. City of York, 577 F.3d 521, 530 (3d Cir. 2009), the Third Circuit Court of Appeals set out the standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions Bell Atlantic Corp. v. Twombly, 550 U.S. 433 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937

3

(2009).

> "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 570).  The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. at 1950.  Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.  (citation omitted).

McTernan, 577 F.3d at 530.  The Circuit Court discussed the effects of Twombly and Iqbal in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before McTernan, Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009).

> [D]istrict courts should conduct a two-part analysis.  First, the factual and legal

4

elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S. Ct. at 1949.]  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  Id. at 1950.  In other words, a complaint must do more than allege a plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  See Philips [v. Co. of Alleghany], 515 F.3d [224,] 234-35 [(3d Cir.2008 )].  As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common

5

>             sense."  Id.

Fowler, 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts.  In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" Guirguis v. Movers Specialty Services, Inc., No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (quoting Twombly, 550 U.S. at 555) (not precedential).

### III. Discussion.

Defendants seek dismissal of all but two counts of Plaintiff's twelve-count complaint.  We consider the viability of each count seriatim.

#### A.   The "State counts", Counts 7 to 12.

Defendant asserts that Supreme Court precedent amplified by Third Circuit caselaw requires that Counts 7-12 of Plaintiff's complaint - - each of which is based upon Pennsylvania statutes or Pennsylvania common law - - be dismissed.  Defendant relies primarily upon Ingersoll-Rand Company v. McClendon, 498 U.S. 133 (1990), for the proposition that state claims relating to an ERISA plan like that in this case are pre-empted because ERISA's structure and purpose evince congressional intent to pre-empt state claims.  Ingersoll-Rand, supra, concerned a situation where allegations were made that Plaintiff was wrongfully discharged in

6

order that his employer could avoid paying him a pension that was to vest four months subsequent to his date of discharge.  In discussing the scope of ERISA, the Supreme Court quoted its previous decision, Shaw v. Delta Airlines, Inc., 463 U.S. 85-90 (1983):

> "The statute (ERISA) imposes participation, funding, and vesting requirements on pension plans.  It also sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility, for both pension and welfare plans."  As part of this closely integrated regulatory system Congress included various safeguard to preclude abuse and "to completely secure the rights and expectations brought into being by this landmark reform legislation."  S.Rep.No. 93-127, p. 36 (1973).

Section 514(a) of ERISA, as set forth at 29 U.S.C. § 1144(a) provides:

> "Except as provided in subsection(b) of this section, <u>the provisions of this</u>

7

>                        <u>subchapter and subchapter III of this</u>
>
>                        <u>chapter shall supercede any and all</u>
>
>                        <u>State laws insofar as they may now or</u>
>
>                        <u>hereafter relate to any employee benefit</u>
>
>                        <u>plan</u> described in Section 1003(a) of
>
>                        this title, and not exempt under Section
>
>                        1003(B) of this title." (emphasis
>
>                        supplied.)[2]

The question whether a law relates to an employee benefit plan is broadly construed. "The key to Section 514(a) is found in the words 'relate to.' Congress used those words in their broad sense, rejecting more limited pre-emption language that would have made the clause applicable to only state laws relating to the specific subjects covered by ERISA." Shaw, supra, at 98. Moreover, to underscore its intent that Section 514(a) be expansively applied, Congress used equally broad language in defining the State law that would be pre-empted. Such laws include "all laws, decisions, rules, regulations or other State action having the effect of law." Section 514(c)(1), 29 U.S.C. 1144(c)(1).

The above authority clearly indicates that any State statute or jurisprudence that purports to encroach upon the remedy provisions of ERISA are pre-empted. This is true even where

---

[2] Plaintiff has acknowledged that Defendants' health insurance plan is within the scope of ERISA. (Doc. 1, p. 9).

8

State law only indirectly affects a plan or is consistent with ERISA's substantive requirements.  Ingersoll-Rand, supra, at 43 (citations omitted).  Given these considerations, the Ingersoll-Rand Court ruled that Plaintiff's State wrongful discharge claim was pre-empted by ERISA.

The Third Circuit has discussed the scope of Ingersoll-Rand in the context of a breach of contract claim under Pennsylvania law. In The 1975 Salary Retirement Plan for Eligible Employees of Crucible, Inc., v. Nobers, et al, 968 F.2d 401 (1992), the Third Circuit observed that, in Ingersoll-Rand: "Six Justices concluded that because the existence of an ERISA plan was a critical factor in establishing liability, and because the trial court's inquiry would be directed to the plan, the suit 'related to' an ERISA plan, and hence was pre-empted....In short, if there were no plan, there would be no cause of action...The Court observed that Section 510 of ERISA, 29 U.S.C. Section 1140(1998), creates a cause of action for interfering with the attainment of a right under an ERISA plan, and the Plaintiff could have and should have sued on that federal cause of action.  (111 S.Ct. at 485.)"

As in Nobers, supra, Plaintiff in this case would have no cause of action were it not for the existence of Defendants' ERISA plan.  As in Nobers, supra, Plaintiff in this case, by his own acknowledgment, enjoys several plausible causes of action under ERISA to redress the harm he has suffered.  Accordingly, this Court

9

must conclude that each of Plaintiff's State claims "relate to" ERISA as that phrase in construed in Ingersoll-Rand and Nobers. Thus, Plaintiff's State claims, Counts 7, 8, 9, 10, 11, and 12, must be dismissed as properly pre-empted by ERISA.

**B.   Count 1 (ERISA Benefit Interference).**

Count 1 of Plaintiff's complaint is pursuant to Section 502(a)(1)(B) of ERISA.  29 U.S.C. Section 1132(a)(1)(B).  Section 502(a)(1)(B) provides that a participant or beneficiary under a group plan may sue "to recover benefits due him under the terms of his plan, to enforce his rights under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan." Defendants' argument is that a plan administrator is not a proper defendant in a Section 502(a)(1)(B) action and, because both Defendants are alleged to be administrators of the plan (Doc. 1, ¶¶ 5 & 6), the claim pursuant to Section 502(a)(1)(B) must be dismissed.  Defendants' support for this proposition is Olick v. Kearney, 451 F.Supp. 2d. 665 E.D.Pa. (2006).  Defendant is incorrect on this point.

The Third Circuit has held that when a party seeks recovery of benefits pursuant to Section 502(a)(1)(B), "the Defendant is the plan itself (or plan administrators in their official capacities only)."  Graden v. Conexant Systems, 496 F.3d 291, 301 (3d. Cir. 2007); cited with approval in Hahnemann Hospital v. All Shore, Inc., et al, 514 F.3d 300, 309 (3d. Cir. 2008).  Inasmuch as

10

Plaintiff's complaint characterized both Defendants as plan administrators, Defendants' rational that this count must be dismissed on the basis that they are not plan administrators is unavailing.  In the context of this Rule 12(b)(6) motion we must accept Plaintiff's allegation that the Defendants were plan administrators as true.  Additionally, because Third Circuit precedent that post dates the district court case Defendant relies upon establishes that plan administrators in their official capacities can be proper subjects of a Section 502(a)(1)(B) action, Count I of Plaintiff's complaint cannot be dismissed.

    **C.   Count 2 (ERISA Breach of Fiduciary Duty).**

Count 2 of Plaintiff's complaint asserts that Defendants are liable under Section 502(a)(2) of ERISA for breaching their fiduciary duty by failing to maintain his enrollment in the plan. (Doc. 1, ¶¶ 47-48).  Defendants contend that Count 2 must be dismissed on the basis that actions pursuant to Section 502(a)(2) may be brought only on behalf of the plan (See LaRue v. DeWolff, Boberg and Associates, 552 U.S. 248 (2008)) and that, because Plaintiff seeks recovery only on an individual basis, his claim pursuant to Section 502(a)(2) is not viable.  Having read Plaintiff's complaint, the Court finds no indication that Plaintiff is trying to vindicate any interest of the plan.

Since both parties rely upon LaRue, supra, we examine the pivotal language in that case.  The Supreme Court recognized in

11

LaRue that Section 502(a)(2)

> "...authorizes the Secretary of Labor as well as planned participants, beneficiaries, and fiduciaries, <u>to bring actions on behalf of a plan</u> to recover for violations of the obligations defined in Section 409(a). The principal statutory duties imposed on fiduciaries by that section "relate to the proper management, administration, and investment of fund assets" with an eye toward insuring that "the benefits authorized by the plan" are ultimately paid to participants and beneficiaries. (Emphasis supplied).

Because of the italicized language in the preceding excerpt from LaRue, the Court must determine that Count 2 of Plaintiff's complaint, which seeks no benefit to the plan, must be dismissed.

**D. Count 3 (Failure to Provide Notice to Plaintiff of the Termination of his Health Insurance Benefits Pursuant to Sections 502(a)(1)(A) and 502(c) of ERISA).**

Count 3 of Plaintiff's complaint is based upon Defendants' alleged failure to provide him with notice of termination of his

12

health benefits pursuant to Section 502(a)(1)(A) and notice of his rights to continue benefits under COBRA.  Defendant asserts that the rights to notification conferred by the statute are triggered only in two situations.  The first of these is conferred "at the time of commencement of coverage of the plan". 29 U.S.C. Section 1166.  Because Plaintiff's Count 3 complains only of the failure to notify him of the termination of his plan, Defendant reasons that Count 3 of Plaintiff's complaint is not viable because the statute requires no such notice.  Another situation in which a plan administrator has a duty to provide notification is in the case of a "qualifying event".  These "qualifying events" are enumerated at 29 U.S.C. Section 1163.  They are: (1) the death of the covered employee; (2) the termination of an employee other than by reason of such employee's gross misconduct; (3) the divorce or legal separation of the covered employee; (4) the covered employee's receipt of Social Security benefits; (5) a dependant child of the covered employee reaching the age of maturity or (6) the bankruptcy of an employer paying retirement benefits to a covered employee.

   The Plaintiff has offered no rejoinder to Defendants' argument that Count 3 is fatally defective because the notice Plaintiff claims to be entitled to finds no support in the law.  Our review of the notice requirements of the statute and Plaintiff's complaint convinces the Court that Defendants' arguments in this regard are valid and that Count 3 should be dismissed.

13

**E.   Count 6 (Fair Labor Standards Act Retaliation).**

In Count 6 of his complaint, Plaintiff alleges that Defendants terminated his employment in retaliation for his complaints that they unlawfully withheld wages and made unreasonably late payment of wages pursuant to the FLSA.  Defendants cite the anti-retaliation provision of the FLSA, which provides explicitly that it is unlawful:

> ...to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter...

29 U.S.C. Section 215(a)(3).  Defendant reasons that, because Plaintiff's Count 6 does not allege that he filed any complaint or instituted any proceeding under the FLSA nor does he allege that his employer was under a mistaken impression that he had done so - - a fact deemed sufficient for an FLSA retaliation claim to be pursued under Brock v. Richardson, 812 F.2d 121 (3d. Cir. 1987) - - Count 6 of Plaintiff's complaint must be dismissed.

Plaintiff responds by directing the Court to relevant language in Brock v. Richardson, supra, regarding the liberal interpretation to be given the FLSA "anti-retaliation provision".  (Doc. 16 at 14).  The Third Circuit in Brock, supra, expressed its

14

understanding that the Supreme Court "has made clear that the key to interpreting the anti-retaliation provision is the need to prevent employees' 'fear of economic retaliation' for voicing grievances about substandard conditions." Brock at 124 (citing Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288, 292 (1950). The Third Circuit then cited, inter alia, a case where the anti-retaliation provision "has been applied to protect employees who have protested Fair Labor Standards Act violations to their employers". See Love v. REMAXX of America, Inc., 738 F.2d. 383, 387 (10th Cir. 1984).  REMAXX, supra, in the Third Circuit's view, was one of those cases where "courts interpreting the anti-retaliation provision have looked to its animating spirit in applying it to activities that might not have been explicitly covered by the language." Brock at 124.  Plaintiff's allegation that he was terminated for asserting his rights under the FLSA directly to his employer (Doc. 1, ¶ 61) must be taken as true by this Court at this stage and must be taken as legally adequate to support his retaliation claim under the principles announced by the Third Circuit in Brock.  Thus, Defendants' motion to dismiss Count 6 of Plaintiff's complaint will be denied.

**IV. Conclusion.**

For the reasons stated above, Defendants' Motion to Dismiss (Doc. 7) will be granted with respect to Counts 2, 7, 8, 9, 10, 11, and 12 of Plaintiff's complaint and denied with respect to Counts 1

15

and 6.  Counts 4 and 5 of Plaintiff's complaint were not challenged by Defendants' motion and thus remain viable as well.  An Order consistent with these determinations will be filed contemporaneously herewith.

BY THE COURT

                                      <u>S/Richard P. Conaboy</u>
                                      Honorable Richard P. Conaboy
                                      United States District Court

Dated: November 22, 2016